## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

INTERNATIONAL PAINTERS AND ALLIED )
TRADES INDUSTRY PENSION FUND )
)
                         Plaintiff, )     CIVIL ACTION NO.
     v. )     1:07-CV-01879 (ESH)
)
AUXIER DRYWALL, LLC )
     a/k/a Auxier Drywall )
     a/k/a Auxier Drywall & Painting )
)
                          Defendant. )

## MOTION FOR ENTRY OF JUDGMENT BY DEFAULT

Plaintiff, International Painters and Allied Trades Industry Pension Fund, respectfully moves this

Court for entry of judgment by default against Defendant, Auxier Drywall, LLC, a/k/a Auxier

Drywall a/k/a Auxier Drywall & Painting ("Company" or "Defendant") in the amount of

$11,107.28. On January 17, 2008, Plaintiff filed with the Clerk of the Court a Request to Enter

Default against Defendant pursuant to Federal Rule of Civil Procedure 55(a). Default was

subsequently entered on January 18, 2008.

      Accompanying this motion are a supporting memorandum of points and authorities, the

Declaration of Thomas C. Montemore (attached as Exhibit 1), the Declaration of Dawn M.

## [GOTO NEXT PAGE]

191988-1

Costa (attached as Exhibit 2), and a proposed default judgment.

Respectfully submitted,

JENNINGS SIGMOND, P.C.

BY:/s/ Kent G. Cprek
KENT G. CPREK, ESQUIRE
(I.D. NO. 478231)
The Penn Mutual Towers, 16th Floor
510 Walnut Street, Independence Square
Philadelphia, PA 19106-3683
(215) 351-0611
Date:  January 21, 2008                 Attorney for Plaintiff


OF COUNSEL:

DAWN M. COSTA, ESQUIRE
Jennings Sigmond, P.C.
510 Walnut Street, Suite 1600
Philadelphia, PA 19106
(215) 351-0616

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| INTERNATIONAL PAINTERS AND ALLIED TRADES INDUSTRY PENSION FUND ) ) ) Plaintiff, ) v. ) ) AUXIER DRYWALL, LLC ) a/k/a Auxier Drywall ) a/k/a Auxier Drywall & Painting ) ) Defendant. ) | CIVIL ACTION NO. 1:07-CV-01879 (ESH) |

**DEFAULT JUDGMENT**

Upon consideration of the Complaint and Motion for Entry of Judgment by

Default of the Plaintiff, International Painters and Allied Trades Industry Pension Fund ("Fund,"

"Pension Fund" or "Plaintiff"), it appears to the Court that Defendant, Auxier Drywall, LLC,

a/k/a Auxier Drywall a/k/a Auxier Drywall & Painting ("Company" or "Defendant"), has

willfully failed to appear, plead or otherwise defend, and it is ORDERED:

1.    Plaintiff's Motion is **GRANTED**;

2.    Judgment is entered against Company and in favor of Plaintiff in the total amount

of $11,107.28 itemized as follows:

(a)    Unpaid contributions for the period of February 2007 through November 2007 in

the amount of $5,687.02 under 29 U.S.C. § 1132(g)(2);

(b)    Late charges for the period November 2006 through December 2006 in the

amount of $13.51;

(c)    Interest from the date contributions became due through December 15, 2007 in

the amount of $157.35;

(d)    Liquidated damages in the amount of $1,137.40.  As indicated above, Defendant

owes $5,687.02 in unpaid contributions.  Defendant owes liquidated damages totaling twenty

percent (20%) of the unpaid contributions.  The total amount of liquidated damages is greater

than the interest due.  Therefore, Defendant owes liquidated damages in the amount of

$1,137.40.

(e)    Attorneys' fees and costs in the amount of $4,112.00 incurred by Plaintiff through

January 17, 2008, as provided in 29 U.S.C. § 1132(g)(2)(D).

3.    Defendant, its owners, officers, agents, servants, attorneys and all persons acting

on their behalf or in conjunction with them shall be and hereby are restrained and enjoined from

refusing to file complete, proper and timely remittance reports with accompanying pension

contributions for all periods for which Defendant is obligated to do so under its collective

bargaining agreement(s).

4.    If further action by the Pension Fund is required to obtain payment of the

amounts owed by Defendant, it may apply to this Court or to the court in which enforcement is

sought, for such further reasonable attorneys' fees and costs in addition to those set out in

Paragraph 2(d) above. See, Trucking Employees of North Jersey Welfare Fund, Inc. v. Bellezza

Co., 57 Fed. Appx. 972 (3d Cir. 2003); International Painters and Allied Trades Industry Pension

Fund v. H.W. Ellis Painting Co., Inc., No. 03-1125, slip. op. at *3 (D.D.C. February 10, 2004)

(citing Free v. Briody, 793 F.2d 807 (7th Cir. 1986); Sheet Metal Workers Health and Welfare

Trust Fund v. Big D Service Co., 867 F.2d 852 (10th Cir. 1989)).

5.    Within ten (10) days of the entry of this Order, Defendant shall fully and

accurately complete and submit to the Plaintiff any and all outstanding remittance reports,

including but not limited to reports and contributions for the period June 2007 through

November 2007, together with a check for the full amount of the contributions and dues due, including interest and liquidated damages.

      6.     Within twenty (20) days of a request by Plaintiff or its counsel, Defendant shall make available to the designated representative of the Plaintiff all payroll books and related records necessary for Plaintiff to ascertain the precise amount of any delinquent contributions due and owing to Plaintiff for all periods in which Defendant is obligated to make fringe benefit contributions to the Plaintiff and Defendant shall bear the costs of said audit.

      7.     Plaintiff shall have the right to conduct future audits for all relevant periods, including the time periods covered by this judgment. Defendant shall be and hereby is restrained and enjoined from failing and refusing to submit to such audits by certified public accountants selected by Plaintiff and shall produce all payroll books and related records requested by Plaintiff, including, but not limited to, payroll, wages, general ledger and cash disbursement records, compensation insurance audits and any other pertinent records deemed necessary for the purpose of ascertaining and/or verifying payments and/or liabilities to Plaintiff. Defendant shall pay Plaintiff any additional amounts found owing, plus such other amounts as set forth in the Agreement, the Agreement and Declaration of Trust of the Pension Fund, the International Painters and Allied Trades Industry Pension Plan, ERISA or any other applicable law.

      8.     If additional delinquencies are discovered pursuant to the submission of the remittance reports or to the audit referred to above, or as a result of additional information that becomes available to the Plaintiff, the Plaintiff may apply to the Court for an additional or supplemental judgment reflecting any additional delinquencies, interest, liquidated damages, attorneys' fees and costs, pursuant to ERISA, 29 U.S.C. § 1132(g)(2) together with any audit costs incurred by the Plaintiff.

191988-1

9. Plaintiff is awarded reimbursement of all additional attorneys' fees and costs it incurs in the collection and enforcement of this judgment as well as those incurred in the collection of delinquent contributions which may be found to be due as a result of the audit provided for in this Order.

10. If Defendant fails to comply with any of the terms of this Order, the Plaintiff may, in addition to pursuing the remedies provided for under Federal Rule of Civil Procedure 69, reopen this case upon motion to the Court and notice to the Defendant, and may at that time ask for further appropriate monetary and/or injunctive relief.

_____

ELLEN S. HUVELLE                    J.
United States District Judge

Date:_____

Copies of this Default Judgment shall be sent to:

Kent G. Cprek, Esquire
Jennings Sigmond, P.C.
The Penn Mutual Towers, 16th Floor
510 Walnut Street, Independence Square
Philadelphia, PA 19106-3683

Auxier Drywall, LLC
a/k/a Auxier Drywall
a/k/a Auxier Drywall & Painting
1101 West James Boulevard
St. James, MO 65559

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

INTERNATIONAL PAINTERS AND ALLIED ）
TRADES INDUSTRY PENSION FUND ）
                                                            ）
                    Plaintiff,          ）          CIVIL ACTION NO.
        v.                                  ）          1:07-CV-01879 (ESH)
                                                            ）
AUXIER DRYWALL, LLC                ）
        a/k/a Auxier Drywall              ）
        a/k/a Auxier Drywall & Painting ）
                                                            ）
                    Defendant.        ）

**MEMORANDUM OF POINTS AND AUTHORITIES IN**
**SUPPORT OF MOTION FOR ENTRY OF JUDGMENT BY DEFAULT**

Plaintiff, International Painters and Allied Trades Industry Pension Fund (the

"Pension Fund"), is entitled to an Order entering judgment by default against Defendant, Auxier

Drywall, LLC, a/k/a Auxier Drywall a/k/a Auxier Drywall & Painting ("Company" or

"Defendant"), in the amount of $11,107.28.

The Pension Fund served its Complaint on Defendant on November 9, 2007.  To date,

Defendant has failed to answer the Complaint or to otherwise defend this action.  Plaintiff filed a

Request to Clerk to Enter Default against the Defendant pursuant to Fed. R. Civ. P. 55(a) on

January 17, 2008.  Default was entered against the Defendant on January 18, 2008.  Plaintiff now

submits its motion for entry of judgment by default.

In light of Defendant's default and Defendant's continuing failure to appear or otherwise

defend, the Pension Fund is entitled to judgment by default against Defendant without a hearing.

Fed. R. Civ. P. 55(b); United States v. De Frantz, 708 F. 2d 310 (7th Cir. 1983); Draisner v. Liss

Realty, 211 F. 2d 808 (1954). Moreover, where a defendant, such as the one here, fails to

respond to the Complaint, all factual allegations in the Complaint are deemed admitted.

191988.1

Thomson v. Wooster, 114 U.S. 104 (1885); Au Bon Pain Corp. v. Artect, Inc., 653 F 2d 61 (2d Cir. 1981); U.S. ex. Rel. v. Carr, 567 F. Supp. 831, 840 (W.D. MI 1983). General allegations of fact are also deemed true. Danning v. Lavin, 572 F. 2d 1386, 1388-89 (9th Cir. 1978) (allegations of insolvency pled in general terms held sufficient to support a finding of fraudulent conveyance or voidable preference).

Defendant is and has been party to collective bargaining agreements (singly or jointly "Labor Contract") with the various local unions and district councils affiliated with the International Union of Painters and Allied Trades, AFL-CIO-CFC ("International" or "Union"), including Local Union No. 1265 ("Local 1265"). Under the Labor Contract, Defendant is required to remit fringe benefit contributions and other sums to Plaintiff. See, Exhibit 1, Montemore Declaration, ¶¶ 5, 6. The failure to pay these fringe benefit contributions and other amounts results in a delinquency to the Plaintiff. Id.

## ARGUMENT

**A.    ENTRY OF JUDGMENT AGAINST DEFENDANT FOR UNPAID CONTRIBUTIONS, INTEREST, LIQUIDATED DAMAGES AND ATTORNEYS' FEES AND COSTS IS APPROPRIATE**

**1.    Company is Bound by the Terms and Conditions of a Collective Bargaining Agreement with the Union.**

Company is a party to a Labor Contract with the Union. See, Exhibit 1, Montemore Declaration, ¶ 5. Under the terms of the Labor Contract, the employer agrees to be bound by the Agreement and Declaration of Trust of the Pension Fund ("Trust Agreement", attached as Exhibit 1 to the Complaint filed in this matter and incorporated by reference) and the International Painters and Allied Trades Industry Pension Plan ("Plan") (attached as Exhibit 2 to the Complaint filed in this matter and incorporated by reference) and by all amendments thereto

and actions taken by the trustees of the Pension Fund. See, Complaint, ¶¶ 7-8; Exhibit 1,

Montemore Declaration, ¶¶ 5, 6. The Labor Contract provides for the payment of contributions

to the Pension Fund for time worked by or paid to employees who perform work covered by its

terms and conditions. See, Exhibit 1, Montemore Declaration, ¶ 6. Failure to make these

contributions, or to submit either incorrect or late remittance reports, results in a delinquency to

the Pension Fund. Id. Under the Trust Agreement, the Pension Fund has the right to audit the

signatory's payroll books and related records to determine that all of the required contributions

have been paid. See, Trust Agreement, Art. VI, Sec. 6.

Furthermore, Section 515 of the Employee Retirement Income Security Act ("ERISA"),

29 U.S.C. § 1145, provides:

> Every Employer who is obligated to make contributions to a
> bargained agreement shall ... make contributions in accordance
> with ... such agreement.

If an employer fails to make the contributions as required by the collective bargaining

agreement and Section 515 of ERISA, then the employer is subject to the provisions of Section

502(g)(2) of ERISA, 29 U.S.C. § 1132(g)(2). Section 502(g)(2) provides for the mandatory

award of the following if a judgment is entered in the Pension Fund's favor pursuant to Section

515:

    A.    the unpaid contributions;

    B.    interest on the unpaid contributions;[1]

    C.    an amount equal to the greater of:

        (i)    interest on the unpaid contributions; or

---

[1]    Section 10.12(b)(2) of the Plan sets the interest rate on delinquent contributions according to the
Internal Revenue Service rate for delinquent taxes. *See*, Complaint, Exhibit 2.

      (ii)     liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the Court under subparagraph (a);[2]

D.     reasonable attorneys' fees and costs of the action, to be paid by the defendant; and

E.     such other legal or equitable relief as the court deems appropriate.

As stated above, Defendant has failed to submit contributions for the period February 2007 through November 2007. See, Exhibit 1, Montemore Declaration, ¶ 7. As a result, Plaintiff is entitled to judgment in at least the amount of $11,107.28.

### a. Defendant owes unpaid benefit contributions in the amount of $5,687.02.

4.     Defendant owes the Pension Fund at least $5,687.02 in contributions for the period February 2007 through November 2007. This amount includes estimates for the period June 2007 through November 2007, a period for which Defendant has failed to submit both contributions <u>and</u> remittance reports to the Pension Fund.  For the period in which the Pension Fund has not received remittance reports and corresponding contributions, the Pension Fund is forced to estimate an amount due from Defendants.  The estimate is reached by averaging the three months of contributions prior to the first month in which no report is received. Using this methodology, the Pension Fund has calculated the amount due for June 2007 through November 2007 as follows:

| MONTH | AMOUNT |
|-------|--------|
| March 2007 | $  464.75 |
| April 2007 | $  418.00 |

---

[2]     ERISA and § 10.12(b)(3) of the Plan's rules and regulations mandate that liquidated damages be awarded in an amount equal to the greater of interest or 20% of unpaid contributions due at the commencement of the lawsuit and those which become delinquent during the course of the litigation. See, Complaint, Exhibit 2. Article VI, Sec. 4 of the Trust Agreement also provides for the assessment of liquidated damages on contributions paid after the due date. See, Complaint, Exhibit 1.

|            |              |
|------------|--------------|
| May 2007   | $   877.25   |
| TOTAL      | $ 1,760.00   |

$1,760.00 divided by three equals $586.67, which is used as the estimated contribution amount

for the period June 2007 through November 2007. Montemore Declaration, ¶ 7.

### b. Defendant owes interest through December 15, 2007, in the amount of $157.35.

Section 10 of the International Painters and Allied Trades Industry Pension Plan ("Plan")

(attached as Exhibit 2 to the Complaint filed in this matter and incorporated by reference) sets

the interest rate on delinquent contributions according to the Internal Revenue Service rate for

delinquent taxes. Interest accruing through December 15, 2007, on Defendant's delinquent

contributions totals $157.35. Interest shall continue to accrue on unpaid contributions in

accordance with the Plan and ERISA until the date of actual payment. Montemore Declaration, ¶

9; 29 U.S.C. § 1132(g)(2); 26 U.S.C. § 6621.

### c. Defendant owes liquidated damages in the amount of $1,137.40.

ERISA and § 10.12(b)(3) of the Plan's rules and regulations mandate that liquidated

damages be awarded in an amount equal to the greater of interest or 20% of unpaid contributions

due at the commencement of the lawsuit and those which become delinquent during the course

of the litigation. Article VI, Sec. 4 of the Pension Fund's Trust Agreement (attached as Exhibit 1

to the Complaint filed in this matter and incorporated by reference) also provides for the

assessment of liquidated damages on contributions paid after the due date. As indicated above,

Defendant owes $5,687.02 in unpaid contributions. Twenty percent (20%) of this amount is

$1,137.40. The total amount of liquidated damages is greater than the interest due. Therefore,

Defendant owes liquidated damages in the amount of $1,137.40. Montemore Declaration, ¶ 10;

29 U.S.C. § 1132(g)(2)(C).

**d. Defendant owes attorneys' fees and costs in the amount of $4,112.00**

Plaintiff has incurred $4,112.00 in attorneys' fees and costs in connection with this matter through January 17, 2007. See, Exhibit 2, Costa Declaration, ¶ 2; Exhibit 3. See, 29 U.S.C. § 1132(g)(2). The Pension Fund is entitled to reimbursement of all attorneys' fees and costs it incurs in connection with the enforcement and collection of any judgment entered by the Court. See, Trucking Employees of North Jersey Welfare Fund, Inc. v. Bellezza Co., 57 Fed. Appx. 972 (3d Cir. 2003); Free v. Briody, 793 F.2d 807 (7th Cir. 1986); Sheet Metal Workers Health and Welfare Trust Fund v. Big D Service Co., 867 F.2d 852 (10th Cir. 1989).

**e. Defendant owes late charges in the amount of $13.51.**

ERISA and § 10.12 of the Plan allow other legal or equitable relief as the Court deems appropriate. Article VI, § 4 of the Pension Fund's Agreement and Declaration of Trust provides for "late charges" in the form of interest on contributions paid more than twenty days after the due date and prior to litigation. Defendant owes $13.51 in late charges for the period of November 2006 through December 2006. Montemore Declaration, ¶ 8. See also, International Brotherhood of Painters and Allied Trades International Union and Industry Pension Fund v. Claser Painting Corporation, No. 91-7185, slip. op. at *1-2 (D.C. Cir. Feb. 1, 1993).

**2.    The Pension Fund is entitled to injunctive relief**

The failure of Defendant to comply with its contractual and statutory obligations results in a substantial adverse impact on the Pension Fund's ability to meet its legal obligations. Montemore Declaration, ¶ 12. The Pension Fund is obligated by the express mandates of ERISA and by the documents and instruments by which it is administered to provide benefits and pension credits to all of Company's employees who are otherwise eligible to receive them. Id;

29 C.F.R. 2530-200b-2(a)(1) and (2); Central States, S.E. & S.W. Areas Pension Fund v. Admiral Merchants Motor Freight, Inc., 511 F.Supp. 38 (D.Minn. 1980), aff'd sub. nom., Central States, S.E. & S.W. Areas Pension Fund v. Jack Cole-Dixie Highway Co., Inc., 642 F.2d 1122 (8th Cir. 1981). The Pension Fund is required to provide these benefits and credits regardless of whether the employer makes the contributions. Montemore Declaration, ¶ 12. For example, if employees perform work covered by the collective bargaining agreement, the Pension Fund has affirmative obligations to credit hours for retirement benefits regardless of whether a signatory employer makes contributions to the Pension Fund. The result of Company's non-compliance with ERISA and the Labor Contract is a significant drain on the Pension Fund's resources. Id.

Additionally, where, as here, Defendant fails to remit its contributions, the Pension Fund loses the income that it would have earned by investing those contributions. Id. This loss of investment income combined with the Pension Fund's requirement to continue paying benefits to Company's employees (as well as to the employees of other signatory contractors) affects the actuarial soundness of the Pension Fund as well as depletes the resources available to pay current pension benefits.

Furthermore, the Pension Fund incurs additional administrative expenses as a result of Defendant's failure to pay its contributions. These losses and added expenses significantly impair the Pension Fund's ability to continue to provide benefits to not only Company's employees, but also to employees of companies that comply with their contractual obligations.

In light of Defendant's failure to comply with its contractual and statutory obligations to the Pension Fund to submit timely, accurate remittance reports and pension contributions each month, and the irreparable harm which Defendant's malfeasance causes the Pension Fund, the Pension Fund respectfully requests the injunctive relief which is set forth in its proposed default

judgment. Laborers' Fringe Benefit Funds v. Northwest Concrete, 640 F.2d 1350, 1352 (6th Cir.

1981); IBPAT Union and Industry Pension Fund v. Hartline-Thomas, Inc. , 4 EBC 1199, 1200

(D.D.C. 1983); Teamsters Local 639 - Employers Trust v. Jones & Artis Construction Co., 640

F.Supp. 223 (D.D.C. 1986).

**B.    DEFENDANT SHOULD BE ORDERED TO PRODUCE THE
APPROPRIATE RECORDS TO ALLOW THE PENSION FUND TO
AUDIT ITS PAYROLL BOOKS AND RELATED RECORDS AND MUST
PAY ANY ADDITIONAL AMOUNTS FOUND TO BE DUE AND OWING**

The determination of an employee's eligibility for benefits is based upon information

contained in the remittance reports, to be filed monthly by each and every signatory employer.

Montemore Declaration, ¶¶ 6, 8, 11. A proper determination of eligibility is not possible if

remittance reports are not submitted or if they contain incorrect or incomplete information. See,

29 U.S.C. § 1132(g)(2)(E) (equitable relief); Teamsters Local 639 – Employers Trust v. Jones &

Artis Construction Co., 640 F. Supp.223 (D.D.C. 1986); IBPAT Union and Industry Pension

Fund v. Hartline – Thomas, Inc., 4 EBC 1199, 1200 (D.D.C. 1983); Laborers' Fringe Benefit

Pension Fund v. Northwest Concrete, 640 F. 2d 1350, 1352 (6th Cir. 1981).

In order to determine whether the contributing employer has made all required

contributions and correctly reported hours worked and paid to its employees, the Pension Fund

has the right to review all of the employer's records that relate to its contributory obligation.

Central States, S.E. & S.W. Areas Pension Fund v. Central Transport, Inc., 472 U.S. 559, 105

S.Ct. 2833 (1985). The employer has the obligation to maintain appropriate records and to permit

the Pension Fund's auditors to review those records upon request. Michigan Laborers' Health

Care Fund v. Grimaldi Concrete, Inc., 30 F.3d 692, 695 (6th Cir. 1994).

In the present case, the Trust Agreement obligates Defendant to allow the audit. <u>See</u> Complaint, Exhibit 1, Art. VI, Sec. 6. The scope of records subject to review is broad, and include those records the auditors reasonably deem necessary to conduct an audit. <u>DeMarco v. C & L Masonry</u>, 891 F.2d 1236 (6th Cir. 1989); <u>See also</u> Exhibit 1, Montemore Declaration, ¶ 8. In addition to the routine payroll records (e.g., time cards, cancelled payroll checks, payroll ledgers and payroll tax returns), they can include the general check registers and cancelled checks, general disbursements ledgers and federal and state corporate income tax returns. <u>Id</u>.

An audit is necessary in this case in order to determine the exact amount due to the Pension Fund because of Defendant's failure to submit contractually-required remittance reports and furthermore, to ensure that the remittance reports submitted by Defendant are correct. <u>See</u> Exhibit 1, Montemore Declaration, at ¶¶ 8, 11. The Defendant's obligations under the Agreement and 29 U.S.C. § 1145 mean nothing if the Pension Fund cannot ensure compliance through an audit. The Court should order Defendant to produce its records for an audit for all periods in which the Defendant is obligated to make contributions to the Pension Fund so that a precise determination of the amount owed can be made. Upon completion of the audit, the Court should enter a further judgment against Defendant for all additional amounts found to be due and owing under the Agreement and ERISA.

## CONCLUSION

Plaintiff, thus, requests that the Court enter a judgment against Defendant, Auxier Drywall, LLC, a/k/a Auxier Drywall a/k/a Auxier Drywall & Painting ("Company" or "Defendant") in the amount of $11,107.28 and, in light of the clear statutory intent of ERISA, it

is further requested that this Court grant the Pension Fund all other relief to which it may be

entitled under applicable law and as requested in the Motion for Default Judgment.

Respectfully submitted,

JENNINGS SIGMOND, P.C.

BY: /s/ Kent G. Cprek
　　 KENT G. CPREK (BAR NO. 478231)
　　 The Penn Mutual Towers, 16th Floor
　　 510 Walnut Street, Independence Square
　　 Philadelphia, PA 19106-3683
　　 (215) 351-0611
　　 Counsel for Plaintiff

DATE: January 21, 2008

OF COUNSEL:
Dawn M. Costa, Esquire
The Penn Mutual Towers, 16th Floor
510 Walnut Street, Independence Square
Philadelphia, PA 19106-3683
(215) 351-0616

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify this 21st day of January, 2008, that I caused to be served a copy of the

foregoing Motion for Entry of Judgment by Default, Memorandum of Points and Authorities in

Support thereof, Declaration of Thomas C. Montemore, Declaration of Dawn M. Costa and

proposed Default Judgment by sending a copy of same via U.S. Mail, postage-prepaid to:

AUXIER DRYWALL, LLC,<br>
a/k/a Auxier Drywall, a/k/a Auxier Drywall and Painting<br>
1101 West James Boulevard<br>
St. James, MO 65559

s/    Kent G. Cprek<br>
KENT G. CPREK, ESQUIRE

Date:  January 21, 2008

191988.1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| INTERNATIONAL PAINTERS AND ALLIED<br>TRADES INDUSTRY PENSION FUND | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION NO. |
| v. | ) | 1:07-CV-01879 (ESH) |
| | ) | |
| AUXIER DRYWALL, LLC | ) | |
| a/k/a Auxier Drywall | ) | |
| a/k/a Auxier Drywall & Painting | ) | |
| | ) | |
| Defendant. | ) | |

### DECLARATION OF THOMAS MONTEMORE

THOMAS MONTEMORE states and declares the following:

1.     My name is Thomas C. Montemore and I am the Assistant to the Fund
Administrator of the International Painters and Allied Trades Union and Industry Pension Fund
("Pension Fund", "Fund" or "Plaintiff"). I have held that position since February 1, 2000. I
served as Delinquency Controller from 1988 through October 31, 2000 and I have served as the
Delinquency Coordinator from 1986 to 1988, and before that, acted as Agreement Clerk from
1982 to 1986, and File Clerk beginning in 1979.

2.     The Pension Fund is an "employee benefit pension plan" as defined in Section
3(2)(A)(i) of ERISA, as amended, 29 U.S.C. §1002(A)(i), established by the International Union
of Painters and Allied Trades, AFL-CIO-CFL ("Union"), and employers in private industry
whose employees are members of or otherwise represented by the Union and its district councils
and local unions, for the purpose of providing retirement income to the employees. The Pension
Fund is administered in the District of Columbia from its and my principal place of business at
1750 New York Avenue, N.W., Washington, D.C. 20006.

191993-1



3.      I have personal knowledge of the contents of the collective bargaining agreements, the Agreement and Declaration of Trust ("Trust Agreement") and the International Painters and Allied Trades Industry Pension Plan ("Plan") referenced in this Motion.

4.      The Pension Fund, as part of its normal operating procedure, maintain files containing copies of the collective bargaining agreements signed by each employer and copies of the remittance reports submitted by each contributing employer. The Pension Fund also maintains, as part of its normal operating procedures, a record of all contributions which are paid to the Pension Fund by each contributing employer, including copies of checks submitted directly from employers as payment for contributions due.

5.      My review of the regular business records maintained by the Pension Fund reveals that the Defendant, Auxier Drywall, LLC, a/k/a Auxier Drywall a/k/a Auxier Drywall & Painting ("Company" or "Defendant"), was a contributing employer of the Pension Fund and is bound to a collective bargaining agreement ("Labor Contract") with the International Union of Painters and Allied Trades, AFL-CIO, CLC.  Under the terms of the Labor Contract, Company is bound to the Trust Agreement and Plan.

6.      The collective bargaining agreement requires Defendant to submit monthly contributions to the Pension Fund on behalf of all employees in the bargaining unit, and sets forth the rate of contribution and the method for calculating the total amount of contributions due the Pension Fund. Contributions must be made for each hour for which employees receive pay at the contribution rate specified in the agreements. Failure to make the required contributions, or to submit either incorrect or late remittance reports and contributions, results in a delinquency to the Pension Fund.

7.    Based upon information currently available to the Pension Fund, Defendant

presently owes the Pension Fund contributions for the for the period of February 2007 through

November 2007 in the amount of at least $5,687.02.  This amount includes estimates for the

period June 2007 through November 2007, a period for which Defendant has failed to submit

both contributions <u>and</u> remittance reports to the Pension Fund.  For the period in which the

Pension Fund has not received remittance reports and corresponding contributions, the Pension

Fund is forced to estimate an amount due from Defendants.  The estimate is reached by

averaging the three months of contributions prior to the first month in which no report is

received. Using this methodology, the Pension Fund has calculated the amount due for June 2007

through November 2007 as follows:

| MONTH | AMOUNT |
|-------|--------|
| March 2007 | $    464.75 |
| April 2007 | $    418.00 |
| May 2007 | <u>$    877.25</u> |
| TOTAL | $ 1,760.00 |

$1,760.00 divided by three equals $586.67, which is used as the estimated

contribution amount for the period June 2007 through November 2007.

8.    Defendant owes late charges in the amount of $13.51.  ERISA and §10.12 of the

Plan allow other legal or equitable relief as the Court deems appropriate.  Article VI, § 4 of the

Pension Fund's Agreement and Declaration of Trust provides for "late charges" in the form of

interest on contributions paid more than twenty days after the due date and prior to litigation.

Defendants owe $13.51 in late charges for the period of November 2006 through December

2006.

9.      Defendant owes interest through December 15, 2007 in the amount of $157.35 on the unpaid pension contributions set forth in ¶ 1. The interest has been calculated in accordance with the fluctuating IRS interest rate, as provided at section 10 of the Plan.

10.     Section 10 of the Plan parallels the ERISA statute, 29 U.S.C. § 1132(g)(2), and requires the assessment of liquidated damages against Defendant in an amount equal to the greater of the following: the amount of interest owed on the delinquent principal, or twenty percent (20%) of the delinquent principal. As noted above, the total interest owed through December 15, 2007 is $157.35. Twenty percent (20%) of Defendants' unpaid contributions is $1,137.40. The total amount of liquidated damages is greater than the interest due. Therefore, Defendant owes liquidated damages in the amount of $1,137.40.

11.     The Pension Fund routinely audits employers to ensure all required contributions are being paid.  It also audits employers in connection with delinquency collection lawsuits. An audit is the most accurate tool employed by the Pension Fund to ensure an employer's compliance with its statutory obligations. In performing these audits, the auditor reviews the payroll records of each employee who performs work of the type covered by the collective bargaining agreement. These records will include time cards, payroll ledgers, payroll summaries, time slips, or such other payroll records as the employer maintains which will indicate the number of hours that each individual employee worked and was paid for each week. The information gathered from these records is then compared to the wage information found on the employer's federal, state and municipal tax returns and on the W-2 statements provided to the employees. The auditor also reviews disbursement ledgers and check registers to identify potential wage payments to employees not made through the payroll system. Job/project contracts are reviewed to determine whether the work performed is within the scope of the

191993-1                                    4

collective bargaining agreement. After compiling the information gathered from the above records, a schedule of the contributions that should have been paid according to the contract is prepared. This schedule, which is broken down by month, is then compared to the actual contributions which the employer did submit to the Pension Fund, with any differences noted. Once completed, an audit report is forwarded to the employer for its review and payment.

12.     Despite a continuing contractual obligation to do so, Defendant has repeatedly failed to submit timely remittance reports and pension contributions. The Pension Fund and its Trustees are required to pay benefits to all properly eligible employees of contributing employers. Employees of contributing employers continue to accrue pension credits, based on the hours of their employment, regardless of whether their employers make pension contributions on their behalf for these hours, as contractually required. The Pension Fund's obligation to recognize pension credits and to pay pensions to vested employees is absolute and continues even if the employers fail to pay their required pension contributions. Employer contributions and the earnings the Pension Fund receives by investing these contributions comprise the assets from which the Pension Fund pays retirement benefits to participants and their dependents and beneficiaries. When employers, like Defendant, fail to pay their contributions or do not pay them timely, the Pension Fund is deprived of the investment income they otherwise could have earned. In addition, the Pension Fund also must engage in time-consuming and costly efforts to collect the unpaid contributions. These efforts include letters and phone calls to the employer, investigating other sources for collection and attempting to calculate delinquency amounts and benefit eligibility through other sources (e.g. paystubs), if available. Further, the Pension Fund has to process benefit eligibility and benefit claims manually so that participants (and their dependents) employed by the delinquent employer are not deprived of

retirement benefits. The actual losses and added costs (in terms of dollar amount, capital and manpower) incurred by the Pension Fund in connection with an employer contribution delinquency are not capable of precise determination, but they are substantial. Defendant's refusal to contribute as it is bound means irreparable harm and injury to the Pension Fund – an obligation to make benefit payments to employees without necessary contributions from Defendant to cover those benefits. Therefore, Defendant should be required to submit timely current contributions and remittance reports in the future.

13.     I have executed this Declaration in support of Plaintiff's Motion for Default Judgment against Defendant and request that this Court consider the same as proof in support of the allegations contained in the Plaintiff's Complaint and other facts stated in this Declaration.

Pursuant to 28 U.S.C. § 1746, I declare under Penalty of perjury that the foregoing is true and correct.

Executed on: 1|4|08

THOMAS MONTEMORE

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

INTERNATIONAL PAINTERS AND ALLIED )
TRADES INDUSTRY PENSION FUND )
                          )
                   Plaintiff, )     CIVIL ACTION NO.
       v. )     1:07-CV-01879 (ESH)
                          )
AUXIER DRYWALL, LLC )
    a/k/a Auxier Drywall )
    a/k/a Auxier Drywall & Painting )
                          )
                Defendant. )

## DECLARATION OF DAWN M. COSTA, ESQUIRE

DAWN M. COSTA states:

1.     I am an associate with the law firm of Jennings Sigmond, P.C. with responsibility

for the case captioned <u>International Painters and Allied Trades Industry Pension Fund v. J.N.J</u>

<u>Architectural Metal & Glass, LLC</u>, Civil Action No. 1:07-CV001502 (PLF). I submit this

declaration to support an award of attorney fees to Plaintiff.

<u>Case Fees</u>

2.     Attached as Exhibit 3 to Plaintiff's Motion for Entry of Judgment by Default is a

list showing all work performed by the office of Jennings Sigmond, P.C. and related costs in

connection with this action through January 17, 2008. The listing was prepared from

contemporaneous attorney time and expenses records and bills, the originals of which are

maintained in the regular business records of Jennings Sigmond. Each piece of work is

separately coded and the work performed is described. The fees relevant to this case are

$3,762.00 and expenses are $350.00 for a total of $4,112.00.

188930.1



3.    The identity of those performing services related to this matter and normal hourly rates are as follows.

| INITIALS | NAME | TITLE | HOURLY RATE |
|----------|------|-------|-------------|
| KGC | Kent G. Cprek | Shareholder | $220.00 |
| SMC | Shanna M. Cramer | Associate | $220.00 |
| JAF | Jerome A. Flanagan | Associate | $220.00 |
| DMC | Dawn M. Costa | Associate | $220.00 |

4.    Plaintiffs only seek judgment for fees in the bills, which reflect a special fee schedule with the International Painters and Allied Trades Industry Pension Fund for a uniform $220.00 per hour rate for all lawyers and $70.00 per hour for paralegals and clerks.

Attorney Background and Experience

5.    Kent Cprek.  Kent Cprek is a shareholder in Jennings Sigmond, P.C. and a co-leader in its ERISA Practice and have practiced law for 28 years. He was admitted to the State Bar of Michigan in November 1978, the bar of the Supreme Court of Pennsylvania in May 1984 and the District of Columbia Bar in 2002. He began practice with the firm of Marston, Sachs, Nunn, Kates, Kadushin and O'Hare, P.C., Detroit, Michigan, 48226, in the representation of plan participants, multiemployer funds and labor unions from 1978 to 1981.  From 1981 to 1984, he was employed by the Pension Benefit Guaranty Corporation as an attorney with responsibility for advice and litigation concerning termination of pension plans. He joined Sagot, Jennings & Sigmond, a predecessor to Jennings Sigmond, P.C. in 1984.  He has a J.D. cum laude from the University of Michigan Law School and a Master of Laws in Taxation from the Georgetown University Law Center. He is admitted to practice before the Supreme Court of the United States, the United States Courts of Appeals for the District of Columbia Circuit, Third Circuit, Fourth Circuit, Fifth Circuit and Sixth Circuit and the United States District Courts for the District of

Columbia, Eastern and Middle Districts of Pennsylvania and the Eastern and Western Districts of Michigan.

Since 1981, his work has been concentrated in the representation of employee benefit plans. His litigation experience includes representation of multiemployer plans and participants for more than twenty years, with trials of a number of actions and arbitrations and significant appellate work involving all aspects of withdrawal liability and pension law. A sample of his litigation experience is available in 53 published cases that be obtained through a Westlaw search for "AT (Cprek)" in the FPENS-CS library.

He has taught on the subject of Collections and Bankruptcy work for employee benefit plans for the International Foundation of Employee Benefit Plans.

> Cprek, "Bankruptcy Basics," Attorney Pre-Conference Sessions, Annual Educational Conference, International Foundation of Employee Benefit Plans (1998)

> Cprek, "Bankruptcy Basics," Attorney Sessions, Trustee and Benefit Professionals Institute, International Foundation of Employee Benefit Plans (1991)

> Cprek, "Bankruptcy Collections by Employee Benefit Plans," Collection Procedures Institute, International Foundation of Employee Benefit Plans (1990)

> Cprek, "Collecting from the Bankrupt Employer," Collections Procedures Institute, International Foundation of Employee Benefit Plans (April 1986)

> Cprek, "Duties of Trustees in the Collection Process: The Law Today," reprinted in Employee Benefits Annual 1986: Proceedings of the Annual Employee Benefits Conference, p. l6 (IFEBP l987).

> Panelist, Seminar on Multiemployer Pension Plan Amendments Act, Pennsylvania Bar Institute (Fall 1987)

His later work has focused on benefit plan mergers and a continuing treatise on termination of single-employer pension plans. Cprek, "Single Employer Pension Plan Terminations," Schneider & Freedman (Eds.), ERISA: A Comprehensive Guide, (2d Ed. Aspen 2003).

6.  <u>Shanna M. Cramer</u>. Shanna M. Cramer, an associate in the firm, has actively

practiced law for three (3) years. She graduated in 1997 from Rutgers University, with honors,

with a Bachelors Degree in History, Political Science and Spanish.  She received her law degree

in 2001 from Rutgers Law School. Ms. Cramer graduated in 2004 from Beasley School of Law-

Temple University, with an LL.M in Taxation. Ms. Cramer has been admitted to the Bars of

Pennsylvania and New Jersey, and has been admitted to practice before the United States District

Court for the Eastern District of Pennsylvania.

7.  <u>Jerome A. Flanagan</u>. Jerome A. Flanagan, an associate in the firm, has practiced

law for four (4) years. He graduated in 2000 from the University of Scranton, with a Bachelors

Degree in English.  He received his law degree in 2003 from Syracuse University. Following law

school, Mr. Flanagan served as a judicial clerk in Lackawanna County, Pennsylvania. Prior to

joining Jennings Sigmond, P.C., Mr. Flanagan practiced insurance defense in the Philadelphia

area.

8.  <u>Dawn M. Costa</u>.  Dawn M. Costa, an associate in the firm, has practiced law for

five years.  She graduated with high honors in 1999 from Rutgers University, with a Bachelor of

Science Degree in Psychology and Administration of Justice.  Ms. Costa received her law degree

in 2002 from Rutgers Law School and subsequently served as a law clerk in the Superior Court

of New Jersey. Ms. Costa is admitted to the Bars of Pennsylvania and New Jersey, and is

admitted to practice before the United States District Court for the Eastern District of

Pennsylvania and the District of New Jersey.

Legal Market Benchmark

    9.    The time and fees charged in this case are reasonable based on prevailing market rates for similar services by lawyers of reasonably comparable skill, experience and reputation in both the Philadelphia and District of Columbia markets.

    10.    My opinion that the time and fees are reasonable is based on a number of factors, including the following.

    (a)    We serve as counsel or co-counsel to over 20 multiemployer employee benefit funds groups. The firm currently has 15 lawyers, with a dedicated benefits department of eight (8) lawyers. The work is specialized and our competition often is large corporate firms with both employee benefits and federal litigation experience. In my experience, our fees are normally substantially lower than the charges of larger firms.

    (b)    The flat rate in this case is consistent with market rates in published surveys by Altman Weil, a leading law firm consultant. Specifically, Altman Weil found a median hourly rate in 2005 of $195 for associates in the Middle Atlantic region (encompassing both Philadelphia and the District of Columbia) and a range up to $273 per hour at the 90th percentile. See Associate Hourly Billing Rates (March 10, 2006), reprinted from http://www.altmanweil.com/PracticeSpecialtiesRates/ and attached hereto as Exhibit 4. The median rate for partners (shareholders) in employee benefits litigation was $305 per hour, *id.*, Practice Specialties and Hourly Rates (October 1, 2005). A $200 rate in 2006 is only a 2.56% increase over the 2005 median for associates only.

    (c)    The fees are consistent with market ranges in a 2004 Ohio bar association survey, downloads.ohiobar.org/conventions/convention2005/session508%20Economics%20of%20Law. pdf, attached as Exhibit 5, especially pages 26 and exhibit 27, especially after giving weight to

191988-1

5

increases from 2004 to 2006 (roughly 5% per year on average in the Ohio survey) and regional differences reflected in Altman Weil data (Ex. 4), showing an 8.33% higher rate in median associates' rates in the Middle Atlantic region ($195) over the East North Central region covering Ohio ($180)). The Ohio survey showed median hourly associate rates in the comparable downtown Cleveland, Cincinnati and Columbus areas of $200 - $235 per hour, ranging up to $334 - $359 at the 90th percentile. See, Exhibit 5 (excerpt page 26). It also shows that a $70 per hour paralegal rate is less than the median rate for 5 years experience in Ohio, without adjustment for regional differences, Exhibit 5 (Ex. 27).

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Signed on:  January 21, 2008

s/ Dawn M. Costa
DAWN M. COSTA, ESQUIRE
The Penn Mutual Towers, 16th Floor
510 Walnut Street, Independence Square
Philadelphia, PA 19106-3683
(215) 351-0616
Attorney for Plaintiff

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| INTERNATIONAL PAINTERS AND ALLIED TRADES INDUSTRY PENSION FUND | ) ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION NO. |
| v. | ) ) | 1:07-CV-01879 (ESH) |
| AUXIER DRYWALL, LLC a/k/a Auxier Drywall a/k/a Auxier Drywall & Painting | ) ) ) ) | |
| Defendant. | ) ) | |

**JENNINGS SIGMOND ATTORNEYS' FEES – August 2007 – January 2008**

| | |
|---|---|
| Kent G. Cprek | KGC |
| Shanna M. Cramer | SMC |
| Jerome A Flanagan | JAF |
| Dawn M. Costa | DMC |

| Date | Attorney | Task | Time |
|------|----------|------|------|
| 1/04/08 | JAF | Review of Documents<br>Calculate Updated Delinquency<br>Preparation of Motion for Default Judgment<br>Preparation of Supporting Memorandum | 4.7 |
| 1/17/08 | DMC | Review of Documents<br>Preparation of Request to Enter Default<br>Preparation of Declaration for Entry of Default<br>Preparation of Attorney Affidavit<br>Review and Revise Form of Default Judgment<br>Review and Revise Motion for Default Judgment<br>Review and Revise Supporting Memorandum | 3.1 |

**TOTAL:** 7.8

**January 2008 Summary**

| | | | |
|---|---|---|---|
| JAF | 4.7 hours x $220.00 | = $ | 1,034.00 |
| DMC | 3.1 hours x $220.00 | = $ | 682.00 |
| Attorneys' Fees 8/07 -- 12/07 | | = $ | 2,046.00 |
| Costs | | = $ | 350.00 |
| **Grand Total:** | | $ | 4,112.00 |


191988.1



# Jennings Sigmond, P.C.
# Time And Expense Details

Report ID:   OT2025 - 15191
Friday, January 04, 2008

Printed By   SLG
Page   1

| Client | Client Reporting Name | Matter | Matter Reporting Name | | | Billing Timekeeper |
|---|---|---|---|---|---|---|
| PTINTF | IUPAT Industry Pension Fund | 29279 | Auxier Drywall & Painting | | | Sigmond, Richard B. |

Beginning To End

**Unbilled Time**

| Date | Timekeeper | Hours Worked | Hours To Bill | Rate | Amount | Task | Activity | Narrative |
|---|---|---|---|---|---|---|---|---|
| 12/10/2007 | JAF | 1.60 | 1.60 | 220.00 | $352.00 | | | Review of Documents<br>Preparation of T. Montemore Declaration<br>Calculate Updated Delinquency Total |

**Unbilled Time Totals**

| | | 1.60 | 1.60 | | $352.00 | | | |

**Billed Time**

| Date | Timekeeper | Hours Worked | Hours On Bill | Rate | Amount | Task | Activity | Narrative |
|---|---|---|---|---|---|---|---|---|
| 8/29/2007 | SMC | 0.40 | 0.40 | 220.00 | $88.00 | | | Review of Documents<br>Open File |
| 9/18/2007 | JAF | 1.80 | 1.80 | 220.00 | $396.00 | | | Review of Documents<br>Computer Research Regarding Corporate Status<br>Preparation of Complaint |
| 9/28/2007 | SMC | 0.20 | 0.20 | 220.00 | $44.00 | | | Review of Correspondence from P. Gilbert<br>Preparation of Correspondence to P. Gilbert |
| 10/1/2007 | JAF | 1.90 | 1.90 | 220.00 | $418.00 | | | Review and Revision of Complaint |
| 10/9/2007 | JAF | 0.20 | 0.20 | 220.00 | $44.00 | | | Review of Correspondence from P. Gilbert (x2)<br>Review of Documents<br>Preparation of Correspondence to P. Gilbert<br>Memo to File |
| 10/30/2007 | JAF | 0.10 | 0.10 | 220.00 | $22.00 | | | Review of Correspondence from P. Gilbert (x2)<br>Review of Documents<br>Preparation of Correspondence to P. Gilbert (x2) |
| 11/27/2007 | JAF | 1.90 | 1.90 | 220.00 | $418.00 | | | Review of Documents<br>Preparation of Correspondence to P. Gilbert<br>Review of Correspondence from P. Gilbert<br>Preparation of Request to Enter Default |
| 11/28/2007 | JAF | 1.20 | 1.20 | 220.00 | $264.00 | | | Review of Correspondence from P. Gilbert<br>Review of Documents<br>Calculate Updated Delinquency<br>Memo to File |

**Billed Time Totals**

| | | 7.70 | 7.70 | | $1,694.00 | | | |

**Billed Expenses**

| Date | Amount | Exp Code | Narrative |
|---|---|---|---|
| 10/1/2007 | $350.00 | 7100 | Filing Fee<br>Was originally billed in error to Auxier 25533<br>Void that fee and billed to 29279 |

Report ID:  OT2025 - 15191
Friday, January 04, 2008

**Jennings Sigmond, P.C.**
**Time And Expense Details**

Beginning To End

**Billed Expenses**

Totals                $350.00

|  | Hours Worked | Hours To Bill | Fee Amount | Expense Amount | Total Amount |
|---|---|---|---|---|---|
| Report Totals | 9.30 | 9.30 | $2,046.00 | $350.00 | $2,396.00 |

*** End Of Report ***

# Associate Hourly Billing Rates by Region



Source: Altman Weil Survey of Law Firm Economics
2005 Edition

See following page for states included
in each region.



EXHIBIT



Census Regions and Divisions of the United States



**Median Hourly Billing Rates**
**Litigation Specialties**

Top Five
Hourly Rates

Equity and
Non-Equity
Partners

Source: Altman Weil Survey of Law Firm Economics
2005 Edition



## THE 2004 ECONOMICS OF LAW PRACTICE IN OHIO SURVEY

### Introduction

During the spring of 2004, the Ohio State Bar Association, Section on Solo, Small Firms and General Practice (OSBA) surveyed the Ohio legal community on the economics of law practice. Two online surveys were utilized, replacing the single mail-based survey instrument provided in past years.

With respect to the economics of law practice, similar studies were undertaken in 2001, 1998, 1994 and 1990. The objectives of these studies were to determine, among other things:

- current demographics of practicing attorneys;

- attorney net income by practice category, gender, field of law, office location, work status, years in practice and firm size;

- associate, legal assistant, and secretary compensation by years of experience and office location;

- prevailing average hourly billing rates for attorneys by a variety of indicators, and rates for legal assistants by years of experience, firm size and office location;

- attorney time allocated to billable and non-billable professional activities; and

- overhead expenses associated with maintaining a private practice by office location and firm size.

Attorneys can compare themselves and their firms against "norms" established by the aggregation of survey data. Time series information is also provided to denote trends. Norms include statistics that are organized by combinations of office location, firm size, gender, work status (full-time vs. part-time), practice class, area of legal concentration and years of practice.

The above information has been consolidated into this reference to help guide attorneys as they plan and manage their professional lives.

For 2004, a survey dedicated to law office technology and marketing issues was also fielded at the same time as the economics survey. Findings from this survey are summarized as Current Issues on Law Office Technology and Marketing in Ohio, 2004 and are available at www.ohiobar.org.

© 2004 Ohio State Bar Association. All rights reserved.

1



## IV.   BILLING RATES AND PRACTICES

### A.   Takeaways.

1. The median hourly billing rate for all attorneys was *$175* for 2004 and *$110* for 1994. The average annual rate of increase in hourly billing rates during this time period was *5.9%*.

2. Rates have increased the most in *suburban Cincinnati* (7.3% per year) and least in *suburban Columbus* (2.5%).

3. Rates increased most for *partners in firms with 8+ partners* (5.9%) and least for *partners in firms with two to seven partners* (3.7%).

4. *Rates increased the most for respondents in* firms with two to five attorneys (6.05%) and least for respondents in *firms with more than 20 attorneys* (4.2%).

5. Rates increased the most for *estate planning attorneys* (9.5%) and *tax attorneys* (7.6%) and least for *bankruptcy* (2%) and *municipal/public entity* attorneys (- 1%).

6. Fifty-six percent of respondents had *not changed* their rates in one year or more.

7. When rates are raised, the prevalent increase is *6-10%* (41% of respondents).

8. *Uncollectibles* (greater than 2% of fees billed) are increasing. The prevalent range is *3-8% of fees billed* (33% in 2004 and 30% in 2000).

9. Attorneys are *increasingly adding service charges* to delinquent accounts where applicable (30% in 2004 compared with 20% in 1990).

### B.   Implications.

1. There is still pricing power for legal services despite intense competition and an ever growing supply of attorneys.

2. Existing and new practice management benchmarks should be available, especially for solos and small firm practicing attorneys, to enable relative standing self assessments.

## V.   ATTORNEY TIME ALLOCATIONS

### A.   Takeaways.

1. The median value for *total hours* worked in 2004 rose to *50* from *48* in 1990 (2500 hours per year on a 50-week year).

*Economics of Law Practice in Ohio* • *3*

**Law Firm Billing Rates and Billing Practices**

## 2004 Attorney Hourly Billing Rates

The reported 2004 median hourly billing rate is $200. The average is $206. While several interacting factors affect the setting and application of hourly billing rates, Exhibit 21 includes three discrete factors: respondents' firm size, years in practice and office location, while Exhibit 22 identifies respondents' primary source of income, and practice category.

**Exhibit 21**     **2004 HOURLY BILLING RATES BY FIRM SIZE, YEARS IN PRACTICE AND OFFICE LOCATION**

| Size of Firm | N | Mean | 25th | Median | 75th | 95th |
|---|---|---|---|---|---|---|
| 1 | 196 | $155 | $125 | $150 | $175 | $225 |
| 2 | 55 | 164 | 125 | 150 | 185 | 250 |
| 3-6 | 77 | 176 | 150 | 175 | 200 | 256 |
| 7-10 | 40 | 196 | 150 | 180 | 244 | 300 |
| 11-20 | 39 | 189 | 155 | 195 | 225 | 275 |
| 21-50 | 49 | 206 | 163 | 200 | 238 | 320 |
| 51+ | 72 | 249 | 186 | 240 | 300 | 377 |
| **Yrs. in Practice** | | | | | | |
| 5 or less | 70 | $147 | $125 | $143 | $175 | $222 |
| 6-10 | 78 | 164 | 125 | 150 | 190 | 250 |
| 11-15 | 65 | 185 | 150 | 180 | 228 | 296 |
| 16-25 | 131 | 184 | 150 | 165 | 220 | 306 |
| More than 25 | 183 | 200 | 150 | 190 | 230 | 340 |
| **Office Location** | | | | | | |
| Greater Cleveland | 121 | $200 | $150 | $185 | $238 | $350 |
| Greater Cincinnati | 61 | 199 | 150 | 180 | 245 | 325 |
| Greater Columbus | 120 | 194 | 150 | 180 | 233 | 300 |
| Greater Dayton | 25 | 179 | 150 | 175 | 193 | 296 |
| Northeast Region | 98 | 165 | 125 | 163 | 196 | 250 |
| Northwest Region | 47 | 152 | 120 | 150 | 175 | 263 |
| Southern Region | 56 | 155 | 125 | 150 | 175 | 250 |
| | | | | | | |
| Downtown Cleveland | 61 | $237 | $183 | $235 | $283 | $359 |
| Suburban Cleveland | 60 | 161 | 150 | 150 | 189 | 220 |
| Downtown Cincinnati | 40 | 213 | 153 | 200 | 271 | 368 |
| Suburban Cincinnati | 21 | 173 | 145 | 175 | 183 | 249 |
| Downtown Columbus | 67 | 217 | 165 | 210 | 260 | 334 |
| Suburban Columbus | 53 | 164 | 145 | 150 | 200 | 243 |
| Dayton | 25 | 179 | 150 | 175 | 193 | 296 |
| Canton | 12 | 154 | 116 | 153 | 183 | 250 |
| Akron | 41 | 186 | 150 | 190 | 223 | 273 |
| Toledo | 26 | 170 | 144 | 168 | 186 | 285 |
| Youngstown | 9 | 146 | 113 | 150 | 178 | 200 |
| Northeast Ohio | 36 | 149 | 125 | 138 | 188 | 225 |
| Northwest Ohio | 21 | 129 | 100 | 125 | 150 | 180 |
| Southeast Ohio | 16 | 155 | 125 | 150 | 188 | 250 |
| Southwest Ohio | 25 | 146 | 125 | 150 | 170 | 207 |
| Central Ohio | 15 | 171 | 150 | 165 | 185 | 250 |
| All Attorneys | 530 | $182 | $150 | $175 | $210 | $300 |

**Exhibit 22**    **2004 HOURLY BILLING RATES BY PRIMARY FIELD OF LAW AND PRACTICE CLASS**

| Primary Field of Law | N | Mean | 25th | Median | 75th | 95th |
|---|---|---|---|---|---|---|
| | | | | Value by Percentile | | |
| Administrative Law | 5 | $241 | $188 | $260 | $285 | $295 |
| Bankruptcy, Debtor | 18 | 135 | 115 | 150 | 168 | 190 |
| Collections | 10 | 146 | 119 | 135 | 164 | 250 |
| Corporate/Business Law | 48 | 201 | 150 | 183 | 225 | 340 |
| Criminal (Public Defendant) | 9 | 139 | 100 | 125 | 175 | 225 |
| Criminal (Private Defendant) | 12 | 154 | 125 | 150 | 173 | 250 |
| Domestic Relations/Family Law | 55 | 173 | 125 | 150 | 200 | 280 |
| Environmental Law/Natural Resources Law | 6 | 200 | 151 | 168 | 283 | 305 |
| General Practice | 14 | 136 | 118 | 132 | 161 | 185 |
| Health & Hospital Law | 6 | 203 | 148 | 195 | 263 | 300 |
| Intellectual Property | 10 | 216 | 174 | 223 | 250 | 300 |
| Labor Law (Management) | 6 | 185 | 150 | 168 | 236 | 255 |
| Employment Law (Management) | 25 | 187 | 138 | 175 | 238 | 324 |
| Employment Law (Labor) | 6 | 178 | 151 | 175 | 208 | 230 |
| Municipal/Public Entity Law | 8 | 164 | 111 | 138 | 225 | 305 |
| Product Liability | 5 | 226 | 138 | 205 | 325 | 425 |
| Personal Injury (Defendant) | 25 | 148 | 110 | 135 | 175 | 270 |
| Personal Injury (Plaintiff) | 43 | 179 | 150 | 160 | 200 | 300 |
| Professional Liability | 6 | 164 | 149 | 165 | 178 | 185 |
| Real Property Law | 26 | 164 | 125 | 150 | 195 | 315 |
| Taxation | 7 | 231 | 175 | 220 | 295 | 300 |
| Trial Practice, not PI (General Civil) | 20 | 190 | 140 | 177 | 200 | 415 |
| Trial Practice, not PI (Commercial) | 20 | 224 | 181 | 210 | 276 | 387 |
| Estate Planning/Wealth Management | 36 | 209 | 175 | 205 | 233 | 308 |
| Probate, Decedents' Estates | 49 | 176 | 150 | 175 | 200 | 250 |
| Workers' Compensation (Plaintiff) | 6 | 167 | 125 | 150 | 213 | 250 |
| Other | 23 | 200 | 150 | 190 | 250 | 358 |
| **Practice Classification** | | | | | | |
| Sole Practitioner | 168 | $153 | $125 | $150 | $175 | $225 |
| Solo with 1+ associates | 42 | 181 | 150 | 175 | 203 | 259 |
| Space Sharer | 21 | 160 | 125 | 150 | 175 | 275 |
| Partner in Firm with 2-7 Partners | 114 | 184 | 150 | 175 | 221 | 300 |
| Partner in Firm with 8+ Partners | 88 | 249 | 196 | 240 | 300 | 381 |
| Associate in Firm with 2-7 Partners | 31 | 156 | 125 | 150 | 175 | 264 |
| Associate in Firm with 8+ Partners | 56 | 180 | 150 | 175 | 210 | 263 |
| All Attorneys | 530 | $182 | $150 | $175 | $210 | $300 |

## Hourly Billing Rates for Associates and Legal Assistants

The distribution of hourly billing rates for associates and legal assistants are summarized by years of experience in Exhibit 23, by office location (Exhibits 24 and 25), and by firm size (Exhibits 26 and 27).

| Exhibit 26 | DISTRIBUTIONS OF 2004 HOURLY BILLING RATES FOR ASSOCIATES BY FIRM SIZE AND YEARS OF EXPERIENCE |

| | Firm Size (Number of Attorneys) | | | | |
|---|---|---|---|---|---|
| Associate Billing Rate Category | 2 | 3-6 | 7-20 | 21+ | All |
| **No Experience** | | | | | |
| <$135 | 57.9 | 78.1 | 69.0 | 43.5 | 61.9 |
| $136-145 | 15.8 | 9.4 | 10.3 | 19.6 | 13.5 |
| $146-155 | 15.8 | 9.4 | 17.2 | 19.6 | 16.1 |
| $156-165 | | | 1.7 | 6.5 | 2.6 |
| $166-175 | 10.5 | | 1.7 | 4.3 | 3.2 |
| $176-199 | | | | 6.5 | 1.9 |
| $225-249 | | 3.1 | | | 0.6 |
| Total | 100% | 100% | 100% | 100% | 100% |
| **3 Years Experience** | | | | | |
| <$135 | 43.8 | 35.3 | 39.0 | 13.0 | 31.0 |
| $136-145 | 18.8 | 20.6 | 22.0 | 19.6 | 20.6 |
| $146-155 | 25.0 | 29.4 | 20.3 | 21.7 | 23.2 |
| $156-165 | | 11.8 | 6.8 | 13.0 | 9.0 |
| $166-175 | 6.3 | 2.9 | 6.8 | 23.9 | 11.0 |
| $176-199 | 6.3 | | 5.1 | 8.7 | 5.2 |
| Total | 100% | 100% | 100% | 100% | 100% |
| **5 Years Experience** | | | | | |
| <$135 | 12.5 | 24.0 | 25.0 | 4.3 | 16.9 |
| $136-145 | 25.0 | 8.0 | 10.7 | 10.6 | 11.0 |
| $146-155 | 12.5 | 40.0 | 25.0 | 10.6 | 22.1 |
| $156-165 | 12.5 | 12.0 | 17.9 | 17.0 | 16.2 |
| $166-175 | | 16.0 | 10.7 | 10.6 | 11.0 |
| $176-199 | 12.5 | | 10.7 | 29.8 | 15.4 |
| $200-224 | 25.0 | | | 14.9 | 6.6 |
| $225-249 | | | | 2.1 | 0.7 |
| Total | 100% | 100% | 100% | 100% | 100% |
| **10 Years Experience** | | | | | |
| <$135 | 33.3 | 14.8 | 19.5 | 5.4 | 14.9 |
| $136-145 | 11.1 | | 4.9 | 2.7 | 3.5 |
| $146-155 | | 22.2 | 14.6 | 5.4 | 12.3 |
| $156-165 | 22.2 | 7.4 | 4.9 | 5.4 | 7.0 |
| $166-175 | | 14.8 | 14.6 | 16.2 | 14.0 |
| $176-199 | | 18.5 | 26.8 | 18.9 | 20.2 |
| $200-224 | 22.2 | 18.5 | 14.6 | 18.9 | 17.5 |
| $225-249 | 11.1 | 3.7 | | 10.8 | 5.3 |
| $250+ | | | | 16.2 | 5.3 |
| Total | 100% | 100% | 100% | 100% | 100% |

**Exhibit 27**  **DISTRIBUTIONS OF 2004 HOURLY BILLING RATES FOR LEGAL ASSISTANTS BY FIRM SIZE AND EXPERIENCE**

| | Firm Size (Number of Attorneys) | | | | |
| Legal Assistant Billing Rate Category | 2 | 3-6 | 7-20 | 21+ | All Firms |
|---|---|---|---|---|---|
| **No Experience** | | | | | |
| $50 or less | 40.0 | 60.0 | 50.0 | 20.0 | 41.0 |
| $51-60 | 30.0 | 20.0 | 20.0 | 17.1 | 20.0 |
| $61-70 | 10.0 | 4.0 | 10.0 | 5.7 | 7.0 |
| $71-80 | 20.0 | 8.0 | 10.0 | 25.7 | 16.0 |
| $81-90 | | 4.0 | | 8.6 | 7.0 |
| $91-100 | | 4.0 | | 17.1 | 7.0 |
| $101-110 | | | | 5.7 | 2.0 |
| Total | 100% | 100% | 100% | 100% | 100% |
| **3 Years Experience** | | | | | |
| $50 or less | 12.5 | 25.0 | 13.3 | 2.8 | 11.7 |
| $51-60 | 62.5 | 35.0 | 23.3 | 11.1 | 24.5 |
| $61-70 | | 20.0 | 26.7 | 22.2 | 21.3 |
| $71-80 | | 10.0 | 13.3 | 11.1 | 10.6 |
| $81-90 | 12.5 | 5.0 | 10.0 | 22.2 | 13.8 |
| $91-100 | 12.5 | | 10.0 | 8.3 | 7.4 |
| $101-110 | | 5.0 | 3.3 | 8.3 | 5.3 |
| $111-120 | | | | 11.1 | 4.3 |
| >$120 | | | | 2.8 | 1.1 |
| Total | 100% | 100% | 100% | 100% | 100% |
| **5 Years Experience** | | | | | |
| $50 or less | 16.7 | 4.5 | 8.6 | 2.9 | 6.2 |
| $51-60 | | 27.3 | 17.1 | 5.9 | 14.4 |
| $61-70 | 66.7 | 22.7 | 11.4 | 14.7 | 18.6 |
| $71-80 | 16.7 | 31.8 | 34.3 | 11.8 | 24.7 |
| $81-90 | | 4.5 | 14.3 | 11.8 | 10.3 |
| $91-100 | | | 11.4 | 17.6 | 10.3 |
| $101-110 | | 9.1 | | 11.8 | 6.2 |
| $111-120 | | | | 11.8 | 4.1 |
| >$120 | | | 2.9 | 11.8 | 5.2 |
| Total | 100% | 100% | 100% | 100% | 100% |
| **10 Years Experience** | | | | | |
| $50 or less | 20.0 | | 2.7 | 3.0 | 3.9 |
| $51-60 | 20.0 | 9.1 | 18.9 | 3.0 | 11.8 |
| $61-70 | | 13.6 | 13.5 | 12.1 | 11.8 |
| $71-80 | 30.0 | 40.9 | 18.9 | 6.1 | 20.6 |
| $81-90 | 10.0 | 18.2 | 21.6 | 6.1 | 14.7 |
| $91-100 | | 13.6 | 16.2 | 18.2 | 14.7 |
| $101-110 | | 4.5 | | 12.1 | 4.9 |
| $111-120 | 20.0 | | 5.4 | 18.2 | 9.8 |
| >$120 | | | 2.7 | 21.2 | 7.8 |
| Total | 100% | 100% | 100% | 100% | 100% |

Exhibit 28 displays the impact of firm size on methods for client billing for legal assistants:

**Exhibit 28**  **LEGAL ASSISTANT CLIENT BILLING METHODS BY SIZE OF FIRM, 2004**

| | Firm Size (Number of Attorneys) | | | | | |
| Billing Method for Legal Assistants | 1 | 2 | 3-6 | 7-20 | 21+ | All Firms |
|---|---|---|---|---|---|---|
| Included with Attorney Fee | 47.1 | 59.5 | 39.7 | 19.7 | 4.7 | 32.1 |
| Time | 42.9 | 35.1 | 55.2 | 73.8 | 87.5 | 60.7 |
| Fee Schedule | 8.6 | 5.4 | 5.2 | 3.3 | 6.3 | 5.9 |
| Total | 100% | 100% | 100% | 100% | 100% | 100% |